IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| LEXOS MEDIA IP, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 2:22-cv-299 |
| THE GAP, INC., | § § § | |
| *Defendant.* | § § § | |

**PLAINTIFF LEXOS MEDIA IP, LLC'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lexos Media IP, LLC ("Lexos Media IP") files this Complaint for patent infringement against Defendant The Gap, Inc. ("The GAP"), and alleges as follows:

**PARTIES**

1. Plaintiff Lexos Media IP, LLC ("Lexos Media IP") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 555 Republic Drive, 2nd Floor, Plano, Texas 75074-5481. Lexos Media IP is the intellectual property holding company of Lexos Media, Inc. ("Lexos Media") and owns intellectual property associated with the business of that company. Lexos Media IP has had its principal place of business located in Plano, Texas since 2015.

2. Lexos Media was founded in 2009. Lexos Media is a digital advertising technology company that pioneered the use of dynamic cursor modification to promote the online purchase and use of products and services likely of interest to users of e-commerce websites. Lexos Media has provided a technology framework for delivering online advertising in which images and content are deployed in connection with a cursor. Lexos Media has provided this technology framework through two divisions -- AdBull and Cursor Marketing -- both of which provided

technology that could be used to modify an Internet user's cursor to display content such as an image or other message to promote the online purchase and use of products and services.  Lexos Media IP has been engaged in licensing this technology both in the online marketing space as well as other fields.

3. Defendant The GAP is a Delaware corporation with its principal executive offices located at Two Folsom Street, San Francisco, California 94105.  The GAP may be served with process through its registered agent The Corporation Trust Company, Corporate Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4. The GAP is a collection of brands offering apparel, accessories, and personal care products for women, men, and children under the Old Navy, GAP, and Athleta brands, among others.

5. The GAP is an omni-channel retailer, with sales to customers both in stores and online, through company-operated and franchise stores, company-owned websites, and third-party arrangements.

6. Since the mid-2000's, The GAP has owned and operated several e-commerce retail websites which have included Gap.com, OldNavy.com, Athleta.com, and GapFactory.com. ("The Gap Websites").  The Gap has issued terms of use applicable to all of these Gap Websites.

## JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code.

8. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. The GAP is subject to the specific personal jurisdiction of this Court because Lexos Media IP's claims for patent infringement against The GAP arise from The GAP's acts of infringement in the State of Texas. These acts of infringement include operating interactive websites using the patented inventions, making those website available to persons in the State of Texas, and facilitating the sale of products and services through that website to those persons.

10. The GAP operates approximately 45 stores in Texas. The GAP has thousands of employees located in Texas. The activities conducted by The GAP and its employees at these facilities located in Texas are substantially related to The GAP's infringing activities conducted in this state.

11. For example, The GAP has emphasized in its 2016 annual report that "we also use our omni-channel capabilities to bridge the digital world and physical stores to further enhance our shopping experience for our customers. Our omni-channel services, including order-in-store, reserve-in-store, find-in-store, and ship-from-store." For example, The GAP allows customers who purchased products online with the ability to pick up and return the purchased items to a GAP store in the United States.

12. Therefore, this Court has personal jurisdiction over The GAP under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042.

13. The GAP also has committed the acts of infringement alleged herein and has regular and established places of business in the Eastern District of Texas.

14. Since at least 2016, The GAP made available and offered its Gap Websites to individuals located in the United States and the Eastern District of Texas.

15. The GAP, pursuant to its Terms of Use for using the Gap Websites, entered into a license agreement with these users of the Gap Websites providing those individuals with access and the right to use the website and shop for products and services on the website.

16. The Gap Websites provided to these individuals implemented features and functionality that infringed the Asserted Patents and The GAP's activities in providing the infringing features and functionality to these individuals in the Eastern District of Texas also infringed the Asserted Patents.

17. The GAP conducts its business operations in the State of Texas through a variety of facilities located in Texas and, specifically, the Eastern District of Texas. The GAP currently operates numerous stores in this District in at least Allen, Frisco, and Plano.

18. These facilities located in the Eastern District of Texas are physical, geographical locations in the district from which the business of The GAP is carried out. These facilities located in the Eastern District of Texas are regular and established places of business of The GAP. Furthermore, these facilities located in the Eastern District of Texas are places of business of The GAP.

19. The GAP owns and operates these facilities or, alternatively, leases these facilities. The GAP directs and controls the operation of those facilities conducted for the benefit of The GAP. The activities and operations conducted at these facilities for the benefit of The GAP are a regular and established part of the business of The GAP. The individuals conducting these activities and operations for the benefit of The GAP are employees of The GAP or, alternatively, are operating under the direction and control of The GAP when conducting these activities and operations.

## THE ASSERTED PATENTS

20. On November 30, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,995,102 ("the `102 Patent") entitled "Server system and method for modifying a cursor image," a true copy of which is attached as Exhibit 1.

21. On September 12, 2000, the United States Patent and Trademark Office issued United States Patent No. 6,118,449 ("the `449 Patent") entitled "Server system and method for modifying a cursor image," a true copy of which is attached as Exhibit 2.

22. Lexos Media IP is the owner by assignment of these Asserted Patents and owns all right, title, and interest in the Asserted Patents, including the right to sue for and recover all past, present, and future damages for infringement of the Asserted Patents.

## THE INNOVATION OF THE ASSERTED PATENTS

23. The Asserted Patents are directed to improvements in the field of online advertising, and provide technical solutions to problems being encountered in that burgeoning field. In order to put the innovation of the Asserted Patents into perspective, it bears emphasis that the application for the asserted `102 Patent was filed in June 1997, a mere few years after online advertisements emerged in the e-commerce marketplace. *See* https://en.wikipedia.org/wiki/Online_advertising.

24. At the time of the invention underlying the Asserted Patents, there were several drawbacks to prevalent forms of online advertising, such as banner advertisements, web page "frames," and "self-appearing" advertising screens. Thus, as the Asserted Patents emphasized, at the time of the invention of the Asserted Patents, "[t]here is a need for a simple means to deliver advertising elements without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored."

25. The Asserted Patents provided a specific technical solution to improve online advertising technology and overcome these problems. The specification of the Asserted Patents pointed out that, while it was not new at the time for pointers and cursors to change

shape, "[i]n conventional systems, the appearance of the cursor or pointer does not change to correspond with on-line content being displayed on the screen."

26. The claims of the Asserted Patents explain how the invention improves on conventional methods of online advertising. In particular, the Asserted Patents disclosed "a server system for modifying a cursor image to a specific image displayed on a video monitor of a remote user's terminal for the purposes of providing on-screen advertising."

27. The claims of the Asserted Patents specifically teach how the invention works to provide the improved online advertising technology. A web browser retrieves a web page stored on a server that is then transmitted to and viewed by a user. The retrieved web page contains a set of predetermined instructions referred to as "cursor display instructions." The browser interprets the information contained in cursor display instructions and instructs the operating system of the user's terminal to bring about the change in appearance of the cursor within the web page. As the Asserted Patents explain, "the server system provides certain information that causes the cursor image on the video monitor of the user terminal to display an image as specified by the server system. As a result, the server system remotely defines and manages the shape and appearance of the cursor image in accordance with a pre-specified condition."

28. The claims of the Asserted Patents contain steps or elements that embody this specific process for implementing the cursor modification invention and improving online advertising. The claims focus on a specific means or method that improves online advertising technology, and are not directed to a desired result or effect that itself merely employs generic processes and machinery. They claim a technological solution to the technological problems and drawbacks encountered in the prior art methods for creating effective online advertising – a

specific process and system for modifying the appearance of a cursor implemented on the display of a user's computer. The asserted claims are directed to a new and useful technique for performing online advertising. They are not directed to a law of nature, natural phenomena, or a business method or algorithm.

## THE ESTABLISHED VALIDITY OF THE ASSERTED PATENTS

29. In 2018, Ralph Lauren ("RL") petitioned the U.S. Patent Trial and Appeal Board (the "PTAB") for *inter partes* review of the `102 and `449 Patents. In particular, RL petitioned for *inter partes* review of claims 70-73 of the `102 Patent and claims 1-3, 5-7, 12-15, 27-29, 31-33, 38-41, 53-56, 58-63, 72-75, and 77-82 of the `449 patent. Although the PTAB cancelled some of the claims, in two final written decisions it found that RL had not shown that the claims 70 and 72 of the `102 Patent and claims 1-3, 5-7, 12-15, 28, 29, 31, 32, 38, 39, 53-56, 58-63, 73-75, and 77-80 of the `449 Patent are unpatentable. RL appealed the PTAB's final written decisions, and the Federal Circuit affirmed those decisions.

## THE CURSOR MODIFICATION ACCUSED INSTRUMENTALITIES

30. One of the innovations The GAP has used to build the popularity and profitability of The Gap Websites is the cursor modification technology covered by the Asserted Patents (the "Accused Instrumentalities").

## FIRST CLAIM FOR RELIEF
### (Infringement of the `102 Patent)

31. The GAP has directly infringed Claim 72 of the `102 Patent by using the method claimed therein with respect to each of The Gap Websites. In particular, The GAP has infringed Claim 72 by using the claimed method when providing the web pages to individuals for use on each of The Gap Websites that operate to modify the appearance of those pages relating to the display of cursors.

32. Since at least 2016, The GAP has used a method via the Accused Instrumentalities for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server owned, operated and/or controlled by The GAP.

33. The method performed by The GAP via the Accused Instrumentalities has included the step of The GAP receiving a request to provide a web page from each of The Gap Websites to a user terminal.

34. The method performed by The GAP via the Accused Instrumentalities has included the step of The GAP transmitting and providing a web page from each of The Gap Websites to a user terminal in response to the request for a web page.

35. The web page provided by The GAP from each of The Gap Websites via the Accused Instrumentalities has included one or more instructions to modify an initial cursor image and contains data corresponding to a specific image displayed, or to be displayed, on a user's terminal that is a modification of an initial cursor image.

36. The method performed by The GAP via the Accused Instrumentalities for each of The Gap Websites has included the step of The GAP providing instructions and code that has controlled and transformed the initial cursor image displayed on the display of the user's terminal into a specific image with a particular shape and appearance in response to The GAP's instructions.

37. The transformed specific image resulting from The GAP's infringing process has included content from each of The Gap Websites corresponding to at least a portion of the information that is to be displayed on the display of the user's terminal.

38. An example of an initial cursor displayed on a user's terminal in connection with a web page provided by The gap.com website appears in Figure 1 below in the form of an arrow.



Figure 1

39.     The transformed specific image resulting from The GAP's infringing process is illustrated in Figure 2 below.  Figure 2 is a screenshot of a web page displayed by the gap.com website reflecting the claimed specific image (the shaded, semi-transparent box surrounding the image of the pointing hand appearing on the left of the screenshot surrounded by the red box) and the claimed corresponding portion of the web page displayed on the display of the website user's terminal (on the right of the screenshot).



Figure 2

40.     The web page depicted in Figure 1 reflects the initial generic cursor image displayed on the user terminal's display when the user has used the gap.com website -- the arrow depicted in Figure 1.  The second web page image, Figure 2, reflects the modification of the initial cursor to a "specific image," which comprises the shaded, semi-transparent box surrounding the image of the pointing hand depicted in Figure 2.  This modification is a consequence of the user moving the cursor image over the display of the pants on the user's terminal.

41.     The GAP's instructions have indicated code provided and controlled by The GAP that is operable to process the instructions to modify the initial cursor image to the image in the shape and appearance of the specific image responsive to movement of the cursor image over a display of at least a portion of the information to be displayed on the display of the user's terminal.

42.     Shown below in Figure 3 is another screenshot of a web page displayed by the gap.com website reflecting the claimed specific image (the shaded, semi-transparent box surrounding the image of the pointing hand appearing on the left of the screenshot surrounded by

the red box) and the claimed corresponding portion of the web page displayed on the display of the website user's terminal (on the right of the screenshot).



Figure 3

43. The shaded, semi-transparent box surrounding the image of the pointing hand is not a generic cursor image. Instead, it is an image that represents some or all of the subject matter being displayed on the website. In particular, the shaded, semi-transparent box is not merely the image of a hand, arrow or other form of functional cursor, but is an image that highlights and draws attention to the portion of the product or subject matter displayed on the web page that appears within the shaded box. That highlighting of, and attention drawn to, a portion of the product or subject matter displayed on the web page is enhanced by the enlarged display of that portion of the product or subject matter appearing within the shaded, semi-transparent box to the right of the specific image. The specific image generated by the Accused Instrumentalities relates the

content displayed within the shaded, semi-transparent box to the content being displayed on the screen.

44. To the extent that any required steps of the claim occurred on a device in the possession, custody or control of and used by a third party, The GAP performed those steps because it initiated and controlled the performance of those steps.

45. Since 2016, The GAP has continued to use the method described and depicted above with respect to each of The Gap Websites for years. For example, the OldNavy.com website operated by The GAP has used the cursor modification technology described and depicted above since 2016, as shown below in Figure 4:



Figure 4

46. The Athleta.com website operated by The GAP has used the cursor modification technology described and depicted above since 2016, as shown below in Figure 5:



Figure 5

47. The GapFactory.com website operated by The GAP has used the cursor modification technology described and depicted above since 2016, as shown below in Figure 6:



Figure 6

48. The duty to mark under 35 U.S.C. § 287 is inapplicable to the asserted method claims of the `102 Patent. There is no applicable marking requirement that has not been complied with.

49. Lexos Media IP has been damaged by The GAP's activities that infringed Claim 72 of the `102 Patent.

### SECOND CLAIM FOR RELIEF
### (Infringement of the `449 Patent)

50. The GAP has directly infringed Claims 1, 38, and 53 of the `449 Patent by making and using those patented inventions in connection with providing individuals with access to The Gap Websites and to shop for products and services on the website. By doing so, The GAP has infringed Claims 1 and 38 of the `449 Patent by making and using the claimed system and making The Gap Websites available to others for use. In addition, The GAP has infringed Claim 53 of the `449 Patent by using the claimed method when providing The Gap Websites for use by others.

51. Since at least 2016, The GAP has made and used the Accused Instrumentalities of The Gap Websites server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal.

52. Since at least 2016, each of The Gap Websites have transmitted a web page to a user's terminal in response to a request from the user terminal for the web page.

53. Since at least 2016, each of The Gap Websites have provided to the user terminal a web page that has included data corresponding to the specific image to be displayed on the user's terminal.

54. Since at least 2016, each of The Gap Websites have provided to the user terminal a web page that has included code which is operable to modify a cursor image on the display of the user's terminal.

55. Since at least 2016, the Accused Instrumentalities for each of The Gap Websites has included a server computer for transmitting a web page to a remote user terminal which has included one or more instructions and an indication of the location of cursor image data.

56. Since at least 2016, web pages transmitted by each of The Gap Websites has contained instructions and code that has been operable to cause the user terminal to display a modified cursor image on the user's display in the shape and appearance of the specific image, reflected in Figures 2-6 above.

57. Since at least 2016, specific image displayed by each of The Gap Websites on the user's terminal has comprised information which has included content corresponding to at least a portion of the information to be displayed on the display of the user's terminal.

58. Since at least 2016, the code of each of The Gap Websites has been operable to process the instructions to modify the cursor image to an image in the shape and appearance of the specific image in response to movement of the cursor image over a display of at least a portion of the information to be displayed on the display of the user's terminal.

59. Since at least 2016, the resulting specific image displayed by each of The Gap Websites has been related to at least a portion of the information to be displayed on said display of the remote user's terminal.

60. Figure 3 set forth in Paragraph 42 above depicts an example of the claimed specific image and the claimed corresponding portion of the specified content information displayed by each of The Gap Websites on the display of the website user's terminal since at least 2016.

61. The GAP, through The Gap Websites, has used the claimed system for purposes of infringement and has put the claimed system into service. In particular, The GAP has controlled each element of The Gap Websites systems and the systems as a whole and has obtained a benefit

from doing so in the form of improved marketing of products and services sold through The Gap Websites. The GAP has provided and controlled any functionality required by the claimed system that has taken place on the user/customer's computer.

62.  Lexos Media incorporates by reference herein the allegations above in Paragraphs 32-47.

63.  Since at least 2016, The GAP has continued to put the claimed system into service through The Gap Websites.

64.  The duty to mark under 35 U.S.C. § 287 is inapplicable to the asserted method claim of the `449 Patent, and there are no unmarked "patented articles" that were sold or offered for sale by Lexos Media IP or its licensees of the `449 Patent that were subject to § 287. In addition, Lexos Media marked its website, lexosmedia.com, with the patent numbers of the Asserted Patents. Consequently, Lexos Media IP has complied with the marking requirement under § 287, to the extent it is applicable.

65.  Lexos Media IP has been damaged by The GAP's infringing activities.

## DEMAND FOR JURY TRIAL

66.  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lexos Media IP hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Lexos Media IP requests the following relief:

(a)  A judgment in favor of Lexos Media IP that The GAP has directly infringed one or more claims of the Asserted Patents;

(b)  A judgment and order requiring The GAP to pay Lexos Media IP damages adequate to compensate for infringement under 35 U.S.C. § 284, which, in no event shall be less than a reasonable royalty for its usage made of the inventions of the Asserted Patents, including pre- and

post-judgment interest and costs;

   (c) A judgment awarding Lexos Media IP post-judgment royalties to the extent applicable; and

   (d) Any and all such further necessary or proper relief as this Court may deem just and equitable.

Dated: August 4, 2022         Respectfully submitted,

                 **BUETHER JOE & COUNSELORS, LLC**

                 */s/ Eric W. Buether*
                 Eric W. Buether (Lead Counsel)
                 State Bar No. 03316880
                 Eric.Buether@BJCIPLaw.com
                 Christopher M. Joe
                 State Bar No. 00787770
                 Chris.Joe@BJCIPLaw.com
                 Kenneth P. Kula
                 State Bar No. 24004749
                 Ken.Kula@BJCIPLaw.com

                 1700 Pacific Avenue
                 Suite 4750
                 Dallas, Texas 75201
                 Telephone: (214) 466-1271
                 Facsimile: (214) 635-1827

                 **ATTORNEYS FOR PLAINTIFF**
                 **LEXOS MEDIA IP, LLC**